UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JOEL D. NASELROAD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 14-389-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DENNIS MABRY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

Plaintiff Joel D. Naselroad brings this action alleging the deprivation of his constitutional rights guaranteed by the Fourth, Fifth, and Eighth Amendments under 42 U.S.C. § 1983, and related state law claims, after he was shot during an attempted "knock and talk" encounter with certain law enforcement officers. This matter is pending for consideration of several motions. Defendants Mark Craycraft, individually and in his official capacity as a Clark County Deputy Sheriff; John Justin Gurley, individually and in his official capacity as a Clark County Deputy Sheriff; Sheriff Berl Purdue,[1] individually and in his official capacity as Sheriff of Clark County, Kentucky; and Clark County, Kentucky (collectively "Clark County Defendants"), have moved for dismissal of all claims asserted against them. [Record No. 27] Defendants Robert Puckett, individually and in his official capacity as an officer with the Paris Police Department, and the City of Paris, Kentucky, also moved for dismissal of the claims asserted against him. [Record No. 31] Finally, Plaintiff Joel D. Naselroad has moved [Record No. 33] for leave to file a Second Amended

---

1   Sheriff Berl Purdue is identified as "Perdue" in the Clark County Defendants' filings, but the original spelling in the Complaint and court docket will be used for consistency.

-1-

Complaint. Having considered the parties' arguments, the Court will grant the plaintiff's motion to file a Second Amended Complaint. The defendants' motions will be granted, in part, and denied, in part, for the reasons outlined discussed.

## I.

At approximately 11:00 a.m. on October 8, 2013, Mabry, Craycraft, Gurley, and Puckett (collectively, the "officers") arrived at Naselroad's residence in Clark County, Kentucky. [Record No. 33-1][2] The officers did not have a warrant, but were there to "execute a 'knock and talk' request to search the property of the plaintiff's family in response to a telephone call" from a third party who reported seeing marijuana there. [Record No. 33-1, ¶ 25] On the same date, immediately before the officers arrived, the Naselroad and members of his family who also lived in the residence, had "viewed a photograph from a trail camera of a masked intruder trespassing on the property." [*Id.* at ¶ 26] The plaintiff allegedly exited the rear entrance of the home without realizing that the officers were there. [*Id.* at ¶ 27] Naselroad claims that he heard noises and then saw Craycraft with his weapon drawn moving towards him. [*Id.* at ¶ 28] Craycraft was not in police uniform and did not identify himself as an officer. [*Id.* at ¶ 29]

Upon seeing Craycraft in his backyard and with a weapon drawn, the plaintiff pulled a .25 millimeter semi-automatic handgun from his pocket and attempted to load a bullet in the chamber. [*Id.* at ¶30] The gun jammed, but Naselroad still pointed it toward Craycraft. [*Id.*] Craycraft yelled "Gun!" [*Id.*] The plaintiff claims that he heard someone else (later determined to be Mabry, who was also not wearing a uniform) yell, "Drop it, police!" [*Id.*] Naselroad alleges that, before he had an opportunity to lower or drop his weapon, Mabry

---

2   All references are to the Second Amended Complaint.

shot him in the chest. [*Id.* at ¶¶ 31, 32] The bullet struck the plaintiff's spine and exited his back. [*Id.* at ¶ 32] Naselroad was ultimately charged with three counts of wanton endangerment; cultivation of marijuana; possession of marijuana; and possession of drug paraphernalia. [*Id.* at ¶ 36] On June 25, 2014, a jury acquitted Naselroad of all charges except misdemeanor charges of possession of marijuana and drug paraphernalia. [*Id.*]

Naselroad filed this action seeking compensatory and punitive damages against Defendants Dennis Mabry, in his individual capacity; Mark Craycraft, in his individual capacity and in his official capacity as a police officer of the Clark County Sheriff's Department; John Justin Gurley, individually and in his official capacity as a police officer of the Clark County Sheriff's Department; Robert Puckett, individually and in his official capacity as a police officer of the Paris Police Department; Berl Purdue, individually and in his official capacity as the Clark County Sheriff; the City of Paris, Kentucky; and Clark County, Kentucky.[3] Naselroad claims that each defendant violated his constitutional rights under 42 U.S.C. § 1983 (Count I). With respect to Defendants Mabry, Craycraft, Gurley, and Puckett, Naselroad asserts claims of conspiracy to violate his civil rights under 42 U.S.C. §§ 1983, 1985 (Count II); intentional infliction of emotional distress (Count IV); negligence (Count V); false imprisonment (Count VII); and malicious prosecution (Count VIII). Naselroad alleges that Mabry is the only defendant who physically assaulted him (Count III). However, he asserts that Purdue, Clark County, and the City of Paris negligently trained, controlled, and supervised the officers (Count VI).

---

3    The Court previously dismissed claims against the Kentucky State Police; Dennis Mabry, in his official capacity; and Mark Craycraft and Robert Puckett, in their official capacities as special duty task force officers with the Kentucky State Police. [Record No. 35]

## II.

While the parties were briefing the motions to dismiss, Naselroad moved for leave to amend his Complaint to clarify the claims presented. The Clark County Defendants objected [Record No. 39] to the motion, arguing that the amendments were futile. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) ("Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss."). Leave to amend should be "freely given" and the Defendants will not be prejudiced by the amendment. Fed. R. Civ. P. 15(a)(2). As discussed below,[4] the Court finds that the amendments are not futile and, therefore, will direct the Clerk to file the Second Amended Complaint (hereinafter, the "Complaint").[5]

## III.

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires

---

4  Rather than parse the arguments relating to the futility of the Second Amended Complaint from the motion to dismiss the Amended Complaint, the Court will address these arguments together by claim.

5  The Second Amended Complaint does not attempt to reassert claims against the Kentucky State Police, Officer Dennis Mabry in his official capacity, and Officers March Craycraft and Robert Puckett in their official capacities as special duty task force officers with the Kentucky State Police. [Record No. 35]

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

### IV.

#### A. § 1983 Claims

Naselroad alleges that the defendants violated a number of his constitutional rights. Craycraft, Gurley, and Puckett move to dismiss his Fourth Amendment claims for excessive force. The parties also discuss the plaintiff's claims for unlawful entry and seizure, but these defendants have not moved for dismissal of this claim.[6] Naselroad concedes that he does not state a claim against Defendant Gurley for Fourth Amendment excessive force or unconstitutional search and seizure. [Record No. 32, pp. 14–15] As a result, those claims against Gurley will be dismissed.

#### 1. Excessive Force

Officers Puckett and Craycraft assert that they cannot be liable to Plaintiff for use of excessive force under the Fourth Amendment. *Burgess v. Fischer*, 735 F.3d 462, 473 (6th Cir. 2013) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard

---

6   Throughout their filings, these defendants labor under the presumption that Naselroad must show that they are liable for Mabry shooting him to state any claim against them. As a result, they focus many of their arguments on causation. However, the defendants largely ignore the plaintiff's allegations relating to their own conduct. For instance, Craycraft and Puckett argue that being present does not render them liable for damages caused by Mabry's alleged excessive force of shooting the Naselroad. Further, Craycraft argues that any attempt to impose liability based on the theory that Mabry would not have shot Naselroad "but for" the officers' unlawful entry into the curtilage of the plaintiff's home and restraint of him has been rejected under similar circumstances in *Estate of Sowards v. City of Trenton*, 125 F. App'x 31 (6th Cir. 2005). Because Naselroad has articulated claims for constitutional violations under § 1983 against Craycraft and Puckett based on their own actions, the Court need not address arguments regarding causation at this stage of the proceedings.

appropriate to that specific provision, not under the rubric of substantive due process." (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).  The parties agree that, to find these defendants liable for excessive force under the Fourth Amendment, Naselroad must show that they: (i) actively participated in the use of excessive force; (ii) supervised the officer who used excessive force; or (iii) owed the victim a duty of protection against the use of excessive force.  *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

      **a.**    **Craycraft's Use of Force**

Naselroad argues that Craycraft used excessive force by pointing his weapon at him during their initial encounter.  Craycraft summarily argues that, as a general rule, merely pointing a gun at a suspect does not amount to the use of excessive force.  *See Thornton v. Fray*, 429 F. App'x 504 (6th Cir. 2011); *Tallman v. Elizabethtown Police Dep't*, 167 F. App'x 459 (6th Cir. 2006); and *Pleasant v. Zamieski*, 895 F.2d 272 (6th Cir. 1990).  However, the excessive force analysis is not as simple as Craycraft would suggest; instead, it is a fact-intensive inquiry.  *Binay v. Bettendorf*, 601 F. 3d 640, 649–50 (6th Cir. 2010).  In *Thornton*, the case on which Craycraft relies primarily, the court analyzed the reasonableness of the officers' actions, "considering (1) the severity of the crime at issue, (2) the immediate threat the suspect posed to the safety of the officer or others, (3) the suspect's resistance, if any, and (4) the possibility of flight."  *Thornton*, 429 F. App'x at 509 (quoting *Dunigan v. Noble,* 390 F.3d 486, 493 (6th Cir.2004)) (internal quotation marks and modifications omitted).

The Fourth Amendment protects citizens from having a gun pointed at them where there is "no suggestion of danger."  *Baird v. Renbarger*, 576 F. 3d 340, 346 (7th Cir. 2009). "[W]hile police are not entitled to point their guns at citizens when there is no hint of danger,

they are allowed to do so when there *is* reason to fear danger." *Id.*; *see Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989); *Meyers v. Mitrovich*, No. 1: 14CV1604, 2015 WL 413804 (N.D. Ohio January 30, 2015). Here, Naselroad alleges that he merely walked out the back door of his own home when he was confronted. At the time that Craycraft drew his gun and pointed it at the plaintiff, none of the defendants had identified themselves as police officers or otherwise made their presence known. *See United States v. Bates,* 84 F.3d 790, 795 (6th Cir.1996) ("[O]fficers must have more than a mere hunch or suspicion before an exigency can excuse the necessity for knocking and announcing their presence."). Naselroad alleges that the officers did not have a search or arrest warrant and that they were merely on the property to investigate a third-party tip regarding marijuana on the property. Whether Craycraft had reason to believe that Naselroad was armed or posed any threat is not evident from the Complaint. At this stage of the case, the plaintiff's allegation is at least plausible on its face such that Craycraft's motion to dismiss this excessive force claim against him will be denied.

    b. **Duty to Protect**

Craycraft and Puckett argue that they did not have a legal duty to protect Naselroad against Mabry's use of excessive force. *Turner*, 119 F.3d at 429. Liability may be found "when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.* (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). Craycraft and Puckett argue that the entire event occurred too quickly for them to have observed or have reason to know that excessive force would be used, and that they did not have the opportunity or the means to prevent Mabry from using it. In support of their

position, the officers rely on the Sixth Circuit's holding in *Murray-Ruhl v. Passinault*, 246 F. App'x 338, 348 (6th Cir. 2007) (finding no duty to intervene where "an entire incident unfolds in a matter of seconds."). In *Passinault*, the shooting officer fired twelve shots "in rapid succession," killing an individual. *Id.* Affirming summary judgment in favor of the non-shooting officer who was present at the scene, the court noted that, "[e]ven if the [non-firing officer] was immediately able to perceive what was happening once the first shot was fired, he would not have had enough time to act to stop" the other officer from shooting. *Id.*

In his Complaint, Naselroad alleges that the events unfolded quickly — so quickly that he did not have time to lower his weapon before Mabry shot him. And only one shot was fired. Craycraft and Puckett did not have sufficient time to process the events and try to intervene. Courts have consistently declined to impose liability where, as here, the events transpired over a few seconds. *See Ontha v. Rutherford Cnty.*, 222 F. App'x 498, 506 (6th Cir. 2007); *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) ("A police officer cannot be held liable for failing to intercede if he has no 'realistic opportunity' to prevent an attack."). Based on these authorities, the plaintiff's excessive force claim will be dismissed as to Craycraft and Puckett insofar as it is premised on a duty to protect.[7]

### 2. Municipal Liability Claims[8]

Clark County and Sheriff Purdue argue that Naselroad has not stated a claim against them based on municipal liability. To state such a claim, a plaintiff must show that the

---

7   Having found that Naselroad does not state a claim for failure to intervene, the Court need not address Puckett's argument that he is entitled to qualified immunity. [Record No. 31, p. 5]

8   Puckett and the City of Paris have moved to dismiss Naselroad's claims against them on the grounds that there was no underlying constitutional violation and, therefore, there "can be no 42 U.S.C. § 1983 municipal liability." [Record No. 31, p. 7] The Clark County Defendants make similar arguments regarding municipal liability. [Record No. 27-1, p. 7] However, the underlying constitutional claims have not been dismissed and the Court declines to dismiss the official capacity claims on this basis.

subject defendant committed some wrong. *Doe v. Clairborne Cnty., Tenn.,* 103 F.3d 495, 507 (6th Cir. 1996) ("[R]espondeat superior is not available as a theory of recovery under section 1983."). The plaintiff must show that the "custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010)). To "survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright v. Gallia Cnty.*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). Where a failure to act is the alleged source of the violation, a plaintiff must show that the municipality's "need to act is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the municipality can reasonably be said to have been deliberately indifferent to the need." *Heyerman*, 680 F.3d at 648 (internal quotation marks and citation omitted). To show a need to act, a plaintiff may demonstrate that the "municipality possessed actual knowledge indicating a deficiency" or that "the need to act should have been plainly obvious to the municipality's policymakers." *Id.* at 648–49.

In the present case, the Plaintiff has pled sufficient facts to state a claim to relief that is plausible on its face for a failure to train and supervise. *Twombly*, 550 U.S. at 570; s*ee Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010). "Mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to prove liability." *Miller*, 408 F.3d at 816. However, Naselroad alleges that these municipal defendants did not have formal or

written policies[9] regarding the "knock and talk" procedure and that the individual defendants had not received training on such procedures. [Record No. 33-1, p. 14] When considered with the plaintiff's other allegations, this is sufficient to state a municipal liability claim against these defendants.

### B. Conspiracy

A civil conspiracy involves an agreement by two or more persons to injure another by unlawful action. *Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943 (6th Cir. 1985)). An agreement among all conspirators is not necessary, and each conspirator need not know all the details of the plan or other participants involved. *Id.* Instead, the plaintiff must show that: (i) there was a single plan; (ii) the alleged co-conspirator shared in the general conspiratorial objective; and (iii) an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. *Id.* Craycraft, Gurley, and Puckett generally argue that Plaintiff has not alleged sufficient facts underlying the alleged conspiracy. *See Iqbal*, 556 U.S. at 678; *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under 1983."). However, Naselroad has alleged that a single plan existed (i.e., the defendants "acting in concert"); that these officer defendants had a single objective (i.e., to violate the plaintiff's statutory and civil rights); that overt acts were committed in furtherance of the conspiracy (i.e., the defendants "intentionally file[d] and pursue[d] false criminal charges,"

---

9    Plaintiff relies on these allegations in support of its § 1983 claims, but they are found in Count VI, which is for the state law claim of negligent supervision. [Record No 33-1, pp. 13–15]

-10-

"promote[d] and assist[ed] in the prosecution of plaintiff" and falsely testified at trial to further this purpose); and which resulted in injury to the plaintiff. Thus, Naselroad has sufficiently stated a conspiracy claim. *See Am. Postal Workers Union*, 361 F.3d at 905–06.

Craycraft and Gurley argue that officers have absolute immunity from liability based on "alleged conspiracies to give false and incomplete testimony in judicial proceedings." *Alioto v. City of Shively*, 835 F.2d 1173 (6th Cir. 1987) (citing *Briscoe v. Lahue*, 460 U.S. 325 (1983); *Macko v. Byron*, 760 F. 2d 95 (6th Cir. 1985)). However, not all acts are shielded by this immunity. *Alioto*, 835 F. 2d at 1174 n.1 ("[T]he doctrine of witness immunity does not shield from liability alleged conspiracies to falsify non-testimonial evidence."). Absolute testimonial immunity does not shield actors from liability for "nontestimonial or pre/post-testimonial acts." *Spurlock v. Satterfield*, 167 F.3d 995, 1004 (6th Cir. 1999). At this stage, Naselroad has alleged sufficient facts (outside of, and in addition to, allegations regarding the officer's testimony) to state a claim for conspiracy to violate his civil rights. As a result, Craycraft, Gurley, and Puckett's motion to dismiss the conspiracy claim will be denied.

### C.  State Law Claims[10]

#### 1.  Intentional infliction of emotional distress

The tort of outrage, also known as intentional infliction of emotional distress, is typically considered a "gap-filler." As a result, it is available where a more traditional tort would not provide an appropriate remedy. *Brewer v. Hillard*, 15 S.W.3d 1, 7–8 (Ky. Ct.

---

10  Defendants Puckett and the City of Paris argue that if the federal claims are dismissed, the Court should decline to exercise jurisdiction over the remaining state law claims. [Record No. 31, p. 8] However, because the federal claims have not been dismissed and these defendants have not made any substantive arguments for dismissal, the state law claims remain pending against Defendants Puckett and the City of Paris.

App. 1999) (citing *Rigazio v. Archdiocese of Louisville,* 853 S.W.2d 295, 299 (Ky. Ct. App. 1993)). "The tort of outrage is still a permissible cause of action, despite the availability of more traditional torts, as long as the defendants solely intended to cause extreme emotional distress." *Green v. Floyd Cnty.*, 803 F. Supp. 2d 652, 655 (E.D. Ky. 2011) (citing *Brewer*, 15 S.W.3d at 7–8). "When the claim of emotional distress is a supplement to another tort claim, such as false imprisonment, the burden of showing sole intent cannot be met." *Lovings v. Hurt*, Civil Action No. 11-216, 2011 WL 5592771, at *3 (E.D.Ky. 2011) (citing *Rigazio*, 853 S.W.2d at 299).

Each of the actions that Naselroad claims to have caused him extreme emotional distress are more properly characterized under a traditional tort for which recovery for emotional distress is allowed. *Banks v. Fritsch*, 39 S.W.3d 474, 480–81 (Ky. Ct. App. 2001). Naselroad's claim of outrage relies on the "shooting . . . subsequent arrest and filing of and pursuit of false criminal charges." [Record No. 33-1, p. 12, ¶58]  However, these actions fall within the traditional torts of assault, battery, false arrest, or malicious prosecution. Accordingly, the state law claims for intentional infliction of emotional distress against Craycraft and Gurley will be dismissed.

**2. Negligence**

Naselroad has failed to state a plausible claim for negligence against Craycraft. Officers do not owe the public a general duty of protection. The duty to prevent harm only arises where a special relationship exists. *City of Florence v. Chipman*, 38 S.W.3d 387, 392 (Ky. 2001). And for a special relationship to exist, Naselroad must have been in custody or otherwise restrained by the state at the time the injury producing act occurred. Further, the violence or other offensive conduct must have been committed by a state actor. *Id.* (citing

*Fryman v. Harrison*, 896 S.W.2d 908 (Ky. 1995); *Ashby v. City of Louisville*, 841 S.W.2d 184 (Ky. Ct. App. 1992)).

As an initial matter, Naselroad cannot state a negligence claim against Craycraft for any actions before he was actually restrained in his backyard. Next, even assuming that Naselroad was otherwise restrained for some period of time before he was shot, he has not identified any action or inaction by Craycraft that would have breached a duty after it arose. To the extent that Naselroad argues that Craycraft was at fault for failing to prevent Mabry from shooting him, that argument has been addressed and rejected. The period between Naselroad's alleged restraint by the officers and Mabry's shot was too brief for Craycraft to intervene. Thus, the state law negligence claim against Craycraft and Gurley will be dismissed.[11]

### 3. Negligent Supervision

Naselroad's negligent supervision claim will be dismissed against Clark County and Sheriff Purdue in his official capacity because these defendants are entitled to sovereign immunity regarding this claim. *Edmonson Cnty. v. French*, 394 S.W.3d 410, 414 (Ky. Ct. App. 2013); *Harlan Cnty. v. Browning*, No. 2012-CA-148-MR, 2013 WL 657880, at *2 (Ky. Ct. App. 2013) ("[A] sheriff is a county official and absent a waiver thereof is cloaked with sovereign immunity when sued in his official capacity."). Sheriff Purdue, in his individual capacity, argues that the negligent supervision claim should be dismissed because Naselroad has not pointed to an underlying tort by Craycraft or Gurley that would have been prevented by proper supervision. In the alternative, Sheriff Purdue argues that he is entitled to qualified

---

11 Naselroad concedes that he did not state a negligence claim against Gurley. [Record No. 32, pp. 14–15]

immunity on this state law claim. The Court concludes that Sheriff Purdue's alternative argument is persuasive.

Purdue argues that he is entitled to qualified immunity regarding tort claims that are based on discretionary acts he performs in good faith and within the scope of his authority. *See Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). The Complaint alleges that Purdue was liable, in part, for a failure to promulgate a written policy on "knock and talk" procedures and for failure to train. *See Williams v. Ky. Dept. of Educ.*, 113 S.W.3d 145, 150 (Ky. 2003) ("Promulgation of rules is a discretionary function; enforcement of those rules is a ministerial function."). "Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523. Here, however, Naselroad does not make any argument against the application of qualified immunity. [Record Nos. 32, p. 11; 40, p. 5] Thus, based upon the absence of any argument to the contrary, the plaintiff's negligent supervision claim against Sheriff Purdue in his individual capacity will be dismissed. *See Harris v. Anderson*, Civil Action No. 5:10cv207-KSF, 2011 WL 3267931, at *6–7 (E.D. Ky. July 29, 2011).

### 4. False Imprisonment

A state law claim for false imprisonment will "lie where (1) Defendant's act by force or threats of force against any other person or property (2) which with intent to caused plaintiff to be confined to an area certain." *Woosley v. City of Paris*, 591 F. Supp.2d 913, 923 (E.D. Ky. 2008). The confinement must have been unlawful. *See Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007). Naselroad not only argues that he was confined by being shot,

but that he was confined prior to his arrest when the officers chased him in the backyard, thereby restraining his movements, and that he was arrested without probable cause. Naselroad has sufficiently alleged a plausible claim for false imprisonment against Craycraft and Gurley. As a result, dismissal of this claim will be denied.

### 5. Malicious Prosecution

Craycraft and Gurley also seek dismissal of the malicious prosecution claim asserted against them. Under Kentucky law, a malicious prosecution claim requires: (i) the institution or continuation of original judicial proceedings; (ii) by, or at the instance, of the plaintiff; (iii) the termination of such proceedings in defendant's favor; (iv) malice in the institution of such proceeding; (v) want or lack of probable cause for the proceeding; and (vi) damages. *Raine v. Drasin*, 621 S.W.2d 895, 900 (Ky. 1981). Naselroad alleges that Craycraft and Gurley knowingly and maliciously made false reports and statements to institute and pursue false criminal charges against him. While Craycraft and Gurley argue that the allegations should be more specific, at this stage of the proceedings, more specific allegations are not necessary to allow the claim to proceed.

### V.

For the foregoing reasons, it is hereby

**ORDERED** that:

1. Plaintiff Joel D. Naselroad's motion for leave to file a Second Amended Complaint [Record No. 33] is **GRANTED**. The Clerk is directed to file the Second Amended Complaint [Record No. 33-1] previously tendered by the plaintiff.

2. The motion [Record No. 27] of Defendants Mark Craycraft, individually and in his official capacity as a Clark County Deputy Sheriff; John Justin Gurley, individually

and in his official capacity as a Clark County Deputy Sheriff; Sheriff Berl Purdue, individually and in his official capacity as Sheriff of Clark County, Kentucky; and Clark County, Kentucky, is **GRANTED,** in part, with respect to the following claims:

      a.      The plaintiff's claim for Fourth Amendment excessive force under 42 U.S.C. § 1983, to the extent it is premised on a duty to protect, against Defendant Mark Craycraft in his individual capacity.

      b.      The plaintiff's claims for excessive force and search and seizure pursuant to 42 U.S.C. § 1983, against Defendant John Justin Gurley in his individual capacity.

      c.      The plaintiff's state law claims for intentional infliction of emotional distress and negligence against Defendants Mark Craycraft and John Justin Gurley in their individual capacities.

      d.      The plaintiff's state law claim for negligent supervision against Defendants Sheriff Berl Purdue, in his individual capacity and in his official capacity as Sheriff of Clark County, Kentucky, and Clark County, Kentucky.

      3.      The motion [Record No. 31] of Defendants Robert Puckett, individually and in his official capacity as a police officer for the Paris Police Department, and the City of Paris, Kentucky is **GRANTED**, in part, with respect to the following claims: the plaintiff's claim for excessive force against Defendant Robert Puckett in his individual capacity.

      4.      The defendants' motions to dismiss [Record Nos. 27, 31] are **DENIED** with respect to all remaining claims.

-17-

This 26th day of March, 2015.



Signed By:
*Danny C. Reeves* DCR
United States District Judge