UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JOEL D. NASELROAD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 14-389-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DENNIS MABRY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the parties' cross-motions for summary judgment regarding the potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994). [Record Nos. 146, 147, 148] For the reasons that follow, the plaintiff's motion will be granted and the defendants' motions will be denied.

## I.

The facts of this case are discussed at length in the Court's Memorandum Opinion and Order of April 22, 2016, so only the relevant background will be provided here. Detective Mark Craycraft, a deputy with the Clark County Sheriff's Department, received information regarding a Winchester resident's complaint concerning a marijuana growing operation on October 8, 2013. [Record No. 105, p. 6] Craycraft spoke with the complainant, who advised that her daughter's boyfriend had seen marijuana plants on the Naselroads' property the previous day. [Record No. 108, p. 9] Craycraft contacted other local police officers, including Defendant Kentucky State Police Trooper Dennis Mabry, to visit the Naselroad residence. [Record Nos. 105, p. 9; 107, p. 6]

The officers traveled to the Naselroad residence in a marked cruiser at around 10:00 a.m. to conduct a "knock-and-talk" and to attempt to obtain consent to search the property. [Record Nos. 104, p. 48; 107 p. 10] Detective Craycraft and Deputy Sheriff John Gurley knocked on the door while the other officers remained in the car. [Record Nos. 105, pp. 12-13; 106, 8-10] The plaintiff's mother answered the knock. As Craycraft and Gurley identified themselves and advised Ms. Naselroad about the citizen complaint, the plaintiff, dressed in camouflage and carrying a gun, walked out the rear door of the entrance. [Record No. 103, pp. 91, 97] Craycraft claims that he saw Naselroad exiting the house and that he yelled, "he's going out back," but Naselroad did not hear the statement. [Record Nos. 105, pp. 15-19; 103, pp. 133-34]

Craycraft moved toward the left side of the house and entered a "breezeway" located between the house and a "smokehouse or root cellar." [Record No. 105, pp. 23-27; 103, pp. 105-108] When Craycraft was halfway down the breezeway, Naselroad, who was standing in the backyard, heard Craycraft say, "hey buddy." [Record No. 103, pp. 111, 113, 117] Without realizing that Craycraft was a police officer and noticing that Craycraft had a holstered gun, Naselroad pulled out his gun and pointed it toward Craycraft. [Record No. 103, pp. 111-12, 132, 147, 267] Naselroad concedes that he was the first to pull his gun and that he may have attempted to place a bullet in the chamber of the gun. [Record No. 103, pp. 229, 231]

In the meantime, Mabry heard Craycraft yell "[g]un, gun, he's got a gun." [100-12, pp. 33] Mabry entered the backyard and yelled "drop the gun" two times. [Record Nos. 100-12, pp. 27-28, 33; 103; p. 132] Naselroad turned to look at Mabry and then looked back at Craycraft. [Record Nos. 103, p. 117-119; 100-12, p. 36] By the time Naselroad heard Mabry identify himself as a police officer, Mabry shot Naselroad. [Record No. 103, p. 133]

Kentucky State Police ("KSP") Lieutenant Jeremy Hamm[1] received a call the morning of October 8, 2013, advising him that there had been a shooting in Clark County involving the KSP. [Record No. 146-2 at p. 9] When Hamm arrived at the Naselroad residence, several officers were present and the plaintiff had already been transported to the hospital. *Id.* at pp. 11-12. Hamm learned, upon arrival, that he would be the officer in charge of processing the scene and obtaining a search warrant, if necessary. *Id.* at p. 14. KSP Trooper Dusty Hon had collected Naselroad's gun, which Hamm took into his possession and placed in his trunk. *Id.* at pp. 12-13. Lieutenant Dalton had collected Defendant Mabry's gun, which he later turn over to Hamm, as well. *Id.* at p. 13.

Hamm testified, "[o]nce we arrived at the scene and aid was given to Mr. Naselroad . . . we recognized the—there was a need to—to try to obtain a search warrant for the inside of the residenc[e]." *Id.* at p. 15. Hamm took photographs of the exterior of the home and spoke to Detectives McIntosh, Moore, and Willoughby to obtain information for the search warrant application. Hamm did not speak with Defendants Mabry or Cracraft, but McIntosh, Moore, and Willougby had talked to them before speaking with Hamm. *Id.* at p. 17.

After obtaining information to apply for the search warrant, Hamm left the scene and went to the Clark County Attorney's office. The Clark County Attorney typed the affidavit and search warrant and, after Hamm reviewed it for accuracy, the two presented the warrant application to Clark County District Judge Earl-Ray Neal. The affidavit described the Naselroad residence and reported that Naselroad had been shot after he racked a weapon and drew it on officers who were there to investigate a marijuana complaint. [Record No. 146-3]

---

[1] Hamm was a detective with the Kentucky State Police on the date in question. [*See* Record Nos. 146-2, p. 5; 146-3, p. 1]

The affidavit also indicated that Naselroad had advised that there was additional marijuana on the property and that a female at the residence said there were additional guns and weapons located inside. *Id.*

Judge Neal issued the warrant at 1:45 p.m. on October 8, 2013. *Id.* at p. 21. Hamm returned to the Naselroad residence, where he and other officers executed the search warrant. *Id.* at pp. 21-22. Officers seized numerous items including marijuana and pipes, which were bagged and collected as evidence. *Id.* at p. 24. The Kentucky State Police subsequently charged Naselroad with two counts of wanton endangerment, cultivation of marijuana, possession of marijuana, and possession of drug paraphernalia. A state grand jury indicted him on these charges, adding a third wanton endangerment charge. [Record No. 43] Naselroad was convicted of possessing marijuana and drug paraphernalia, but acquitted of the wanton endangerment and marijuana cultivation charges.

Plaintiff Naselroad filed a § 1983 action against the defendants on October 6, 2014, alleging, *inter alia*, that Craycraft and Mabry violated his Fourth Amendment rights by unlawfully entering the curtilage of his home and that Mabry used excessive force by shooting him. Naselroad also asserted state-law claims, including assault and battery against Mabry.[2] The defendants moved for summary judgment and the Court granted the motions in favor of all defendants in April 2016. [Record No. 121] Naselroad appealed the grant of summary judgment with respect to his Fourth Amendment claims against Craycraft and Mabry and his state-law claim for battery against Mabry. [Record No. 123] Although the parties did not raise the potential applicability of *Heck v. Humphrey*, 512 U.S. 477 (1994), before this Court or on

---

[2] Naselroad filed a Second Amended Complaint on March 26, 2015, [Record No. 43] which was the subject of the defendants' motions for summary judgment.

appeal, the Sixth Circuit reversed and remanded, concluding that it was unclear whether the plaintiff's § 1983 claims relate to his subsequent arrest, potentially creating an issue under *Heck*. Perhaps unsurprisingly, *Heck* does not bar the plaintiff's § 1983 claims.

## II.

In *Heck v. Humphrey*, 512 U.S. at 486-87, the Supreme Court held that, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in his favor necessarily would imply the invalidity of his conviction or sentence. If it would, the § 1983 complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id.* at 487. However, if success in § 1983 action would *not* demonstrate the invalidity of an outstanding criminal judgment, the action is allowed to proceed, absent some other bar to the suit. *Id.*

The Court determines, on a case-by-case basis, whether a favorable Fourth Amendment judgment would impugn the validity of an outstanding criminal conviction. *Harper v. Jackson*, 293 F. App'x 389, 391-92 (6th Cir. 2008) (citing *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995)). Due to doctrines like independent source, inevitable discovery, and the good faith exception, some § 1983 Fourth Amendment actions, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful. *Heck*, 512 U.S. 487 n.7. When the contested search produced the *only* evidence supporting the conviction and "no legal doctrine could save the evidence from exclusion," *Heck* bars Fourth Amendment claims. *Harper*, 293 F. App'x at 391-92 (citing *Ballenger v. Owens*, 352 F.3d 842, 847 (4th Cir. 2003); *Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir. 1999)). The parties agree that this is the applicable law. [Record Nos. 146-1, p. 6; 148-1, p. 3] But this is where their agreement ends.

The defendants concede that the evidence supporting Naselroad's convictions was not seized directly as a result of the alleged Fourth Amendment violations but, instead, pursuant to a warrant that was based on information obtained as a result of those violations. Assuming this is true, *Heck* still does not bar Naselroad's search and seizure claims under § 1983 because the good-faith exception applies. *See United States v. Leon*, 468 U.S. 897, 913 (1984) (holding that exclusionary rule does not apply when officers rely in good faith on a warrant that is ultimately determined to lack probable cause).

Lieutenant Hamm provided the affidavit in support of the search warrant. [Record No. 146-3] Therein, he reported that officers traveled to the Naselroad residence located at 1620 Cole Road, Winchester, Kentucky, to investigate a tip regarding a marijuana grow. *Id.* at p. 2. Lieutenant Hamm stated that, while talking to a female at the residence, Craycraft observed a white male, dressed in camouflage, exit the back of the property. *Id.* Hamm also reported that the individual, later identified as the plaintiff, pulled a gun from a holster, inserted a bullet, and pointed the loaded gun at officers. *Id.* After repeated demands to drop the weapon, officers were forced to fire upon Naselroad. *Id.* According the affidavit, the female at the residence advised that there were additional weapons and guns there. Naselroad also advised officers that there was marijuana growing on the premises. *Id.* Based on this information, Hamm sought to search the real property at 1620 Cole Road for items including marijuana and weapons. *Id.* at p. 1.

For the good faith exception to apply, the affidavit must contain "a minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. Carpenter*, 360 F.3d at 591, 596 (6th Cir. 2004) (en banc). Certainly, such a nexus is present here. The affidavit includes a vague reference to the citizen complaint regarding the marijuana grow at

the Naselroad's residence. [Record No. 146-3, p. 2] However, it describes with particularity the alarming events that occurred after officers identified themselves as officers investigating the growing of marijuana on the property. Further, Hamm reported that Naselroad told officers that marijuana was growing on the property and that Ms. Naselroad reported that weapons were located inside the residence. *Id.* The residence and its location was described with significant detail. *Id.* at p. 1.

The defendants' argument that this case is like *United States v. Reilly*, 76 F.3d 1271 (2d Cir. 1996), and that the good faith exception does not apply, is unpersuasive. In *Reilly*, police officers visited the defendant's home without a warrant twice, entering the curtilage on one of those occasions. 76 F.3d at 1274, 1279. After discovering approximately 20 marijuana plants, they obtained a search warrant. *Id.* at 1274. The officers returned and executed the search warrant, finding about 120 more marijuana plants on Reilly's property. *Id.*

The United States Court of Appeals for the Second Circuit determined that the good faith exception did not save the seized evidence from exclusion. However, the court's reasoning was based largely on the fact that the officer who applied for the warrant was the same officer who searched Reilly's curtilage without a warrant. *See id* at 1280. Further, the officer presented a bare-bones description of Reilly's land to the judge who issued the warrant. *Id.* Most importantly, the officer failed inform the judge regarding his behavior, depriving the judge of the ability to determine whether the affidavit was based on fruit of an illegal search that lacked the elements of good faith. *Id.*

In contrast, Hamm was not involved in the alleged Fourth Amendment violations and conducted an independent investigation when he arrived upon the scene. He did not speak with Defendants Craycraft and Mabry, but instead talked to officers who had received

information from Craycraft and Mabry. It does not appear that these officers witnessed the shooting themselves. There is no evidence that Hamm had any reason to believe that constitutional violations had taken place. Further, there is no suggestion that the issuing judge was anything other than neutral and detached.

The defendants suggest that the affidavit was deficient because it did not describe certain features of the Naselroad residence including the breezeway and the smokehouse/root cellar. The defendants contend that, without this information, Judge Neal was unable to determine whether the evidence supporting the search warrant application was obtained in violation of Naselroad's Fourth Amendment rights. However, there is nothing to indicate that Lieutenant Hamm knew or had reason to know that such details were important or that he omitted them from the affidavit to mislead the issuing judge. *See United States v. Abernathy*, 843 F.3d 243, 257 (6th Cir. 2016) (good faith exception does not apply when "the supporting affidavit contained knowing or reckless falsity"). Further, the absence of this information does not render the affidavit so facially deficient "that the executing officers cannot reasonably presume it to be valid." *Id.* (quoting *Leon*, 468 U.S. at 923).

And while it does not factor into the Court's analysis, it is worth noting that the plaintiff, who was represented by counsel during his criminal trial, did not move to suppress the evidence that was seized as a result of the search warrant. For the reasons explained above, the decision in *Heck v. Humphrey*, 512 U.S. 477, is not a bar to the plaintiff's § 1983 search and seizure claims under the Fourth Amendment.

The parties appear to agree that *Heck* has no impact on Naselroad's § 1983 excessive force claim against Defendant Mabry. Mabry incorporated by reference the Memorandum in Support filed by Craycraft, which did not address *Heck's* potential effect on the excessive force

claim. [Record Nos. 147, 146-1] Regardless, there is no indication that Naselroad's excessive force claim could imply the invalidity of his state convictions for possessing marijuana and drug paraphernalia. *See Hodge v. City of Elyria*, 126 F. App'x 222, 225 (6th Cir. 2005) (*Heck* was not a bar to § 1983 claim because Hodge's convictions related to drug possession and tampering with evidence were wholly unrelated to excessive force). Accordingly, *Heck* is not a bar to the plaintiff's § 1983 Fourth Amendment excessive force claim.

This Court previously concluded that Defendants Craycraft and Mabry were entitled to qualified immunity with respect to the plaintiff's search and seizure claims under 42 U.S.C. § 1983. [Record No. 121, p. 17] The Court also concluded that Mabry was entitled to qualified immunity with respect to the plaintiff's excessive force claim under § 1983. *Id.* at p. 25. The plaintiff contends that the Sixth Circuit reversed those findings on the merits and that this Court is required to submit the issues to a jury. However, it is unlikely that the Sixth Circuit reached the merits of this Court's analysis while failing to include any discussion of it whatsoever. The remand order is devoted entirely to the *Heck* issue and states "[a] remand is therefore necessary for further factual developments and review as to *Heck's* applicability." Having reviewed the record, the Court sees no reason to disturb its prior ruling regarding the defendants' motions for summary judgment.

### III.

Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Mark Craycraft's supplemental motion for summary judgment [Record No. 146] is **DENIED**.

2. Defendant Dennis Mabry's supplemental motion for summary judgment [Record No. 147] is **DENIED**.

3. Plaintiff Joel Naselroad's motion for partial summary judgment regarding the applicability of *Heck v. Humphrey* [Record No. 148] is **GRANTED** to the extent that the United States Supreme Court's decision in *Heck* does not bar litigation of his § 1983 claims.

4. The Court's Memorandum Opinion and Order of April 22, 2016 [Record No. 121] remains in effect.

5. A separate Judgment shall issue this date.

This 19th day of December, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge