UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JOEL D. NASELROAD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 14-389-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DENNIS MABRY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Kentucky State Police Trooper Dennis Mabry shot Plaintiff Joel Naselroad during an investigation at Naselroad's home. A jury trial is scheduled to commence on February 25, 2020, during which Naselroad will present the following claims: 1) excessive force in violation of the Fourth Amendment to the United States Constitution under 42 U.S.C. § 1983; 2) state-law assault and battery; and 3) state-law malicious prosecution. Mabry has filed a motion *in limine* seeking exclusion of certain evidence at trial. [Record No. 185] The motion will be granted, in part, and denied, in part, for the reasons that follow.

**I.**

This action arises out of events that occurred on October 8, 2013, at the residence where Naselroad lived with his parents in Winchester, Kentucky. The details concerning the incident have been relayed in previous opinions, so only the basic facts will be repeated here. Defendant Mabry, along with officers Mark Craycraft, John Gurley, and Robert Puckett went to the Naselroad residence to investigate a tip that marijuana was growing on the property. The officers did not have a search warrant but intended to conduct a knock and talk.

Craycraft and Gurley knocked on the door, which was answered by the plaintiff's mother Jeannie. The officers introduced themselves and explained that they were there to investigate a report of marijuana growing on the property. Around that same time, the plaintiff, armed with a handgun and dressed in camouflage, exited through the back door of the residence. The parties dispute what happened next, but Naselroad concedes that he held his gun in the "low ready" position when confronted by Mabry and Craycraft in the backyard. Ultimately, Mabry shot Naselroad once in the chest when he did not drop his weapon.

Naselroad was transported to a hospital and officers continued their investigation at the residence. Naselroad was later indicted on state charges of cultivation and possession of marijuana, possession of drug paraphernalia, and three counts of wanton endangerment. He was convicted on the possession charges, but acquitted on the three counts of wanton endangerment. Naselroad subsequently filed suit against the officers and their employers alleging a host of federal civil rights and state law claims. Following a somewhat arduous procedural history, which includes two trips to the United States Court of Appeals for the Sixth Circuit, the matter is ready to proceed to trial. As noted above, Naselroad's only remaining claims are against Defendant Mabry for use of excessive force in violation of the Fourth Amendment, assault and battery, and malicious prosecution.

## II.

"A motion *in limine* is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). Courts should exclude evidence on a motion *in limine* only when the challenged evidence is clearly inadmissible. *Morningstar v. Circleville Fire & EMS Dep't*, No. 2: 15-cv-

3077, 2018 WL 3721077, at *1 (S.D. Ohio Aug. 6, 2018). Motions *in limine* which seek to exclude broad categories of evidence are usually denied. When there is an arguable basis for admitting the challenged evidence, "[t]he better practice is to deal with questions of admissibility as they arise." *Id.* (quoting *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)). Whether to grant a motion *in limine* falls within the trial court's discretion. *Id.* (citing *Delay v. Rosenthal Collins Grp., LLC*, No. 2: 07-CV-568, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012)).

### III.

#### A. Undisputed Issues

Mabry seeks exclusion of any evidence suggesting that the knock and talk or the officers' entry onto the Naselroad property was wrongful or unlawful. The plaintiff agrees that introduction of such evidence would be improper, in light of the Sixth Circuit's determination that the officers were entitled to qualified immunity regarding his claims of unlawful intrusion onto the property. While the plaintiff may not introduce evidence regarding the propriety of this conduct (e.g., whether police exceeded the "scope" of the knock and talk), some testimony concerning the events may be admissible as *res gestae* of the case.

Naselroad also agrees that evidence concerning unrelated police misconduct, other police shootings, or prior lawsuits involving Mabry or any of the other officers will not be introduced. Additionally, Naselroad concedes that evidence of "other bad acts" by Mabry or any other police officer is inadmissible, with the exception of Mabry's alleged conduct that forms the basis of Naselroad's malicious prosecution claim. Likewise, the plaintiff agrees to refrain from offering evidence concerning Mabry's retirement from the Kentucky State Police and Mabry's right to statutory indemnity.

## B. Disputed Issues

Naselroad opposes Mabry's request to exclude any evidence regarding "facts that did not involve Mabry and were unknown to him." The Court agrees that this is an overly-broad request, which is not excludable based on a motion *in limine*. As Mabry points out, the reasonableness of his use of deadly force depends on the facts known to him at the time of the shooting. However, which facts he knew at that time is a question for the jury. Additionally, some information not known to Mabry may be necessary to tell a complete story of the events. To the extent Mabry believes individual portions of testimony are irrelevant or unduly prejudicial, he may renew his objections during trial.

Mabry also seeks to exclude evidence of Naselroad's acquittal on the wanton endangerment charges. However, to prove his claim of malicious prosecution, Naselroad must establish that the underlying criminal proceeding terminated in his favor. *Martin v. O'Daniel*, 507 S.W.3d 1, 12 (Ky. 2016). While a criminal acquittal is generally regarded as hearsay, several courts have permitted introduction of the plaintiff's underlying acquittal in malicious prosecution cases. *See Olah v. Shultz*, No. 4: 10-1001, 2011 WL 5920915 (M.D. Penn. Nov. 28, 2011) (court allowed plaintiff to introduce judgment of acquittal to prove malicious prosecution without discussing hearsay rule); *Bruce v. Perry*, No. 03-cv-558-DRH, 2007 WL 2608835 (S.D. Ill. Sept. 5, 2007) (same); *Link v. Hall*, No. 3: 08-CV-327-MCR-MD, 2011 WL 13232375 (N.D. Fla. Feb. 4, 2011) (same); *Gatt v. Joseph*, No. 09-28, 2011 U.S. Dist. LEXIS 18662 (E.D. La. Nov. 2, 2011) (admitting evidence of acquittal, stating that "numerous courts have admitted records of acquittal as evidence that the proceeding terminated in the plaintiff's favor in malicious prosecution cases, despite it not falling under a hearsay exemption or exception").

It does not appear that any court within the Sixth Circuit has addressed the hearsay issue head-on, but *McKinney v. Galvin*, 701 F.2d 584 (6th Cir. 1983), provides some clarity. McKinney was arrested for driving under the influence, but was acquitted of the charge following a jury trial. He sued the police officer who had arrested him, alleging malicious prosecution, among other claims. McKinney abandoned his malicious prosecution claim prior to trial, and the district court excluded evidence of McKinney's acquittal. A jury found in favor of the defendant on McKinney's other claims, and he appealed.

The court of appeals noted that judgments of acquittal technically are hearsay and that exclusion is typically favored. *Id.* at 586 n.5. However, it suggested that admission may be appropriate in a malicious prosecution case. It stated: "[h]aving determined that McKinney had abandoned his claims of malicious prosecution, *which would have required proof of favorable disposition*, the [d]istrict [c]ourt exercised its discretion to exclude as more prejudicial than probative evidence that . . . McKinney had been acquitted by a jury on the charge of driving under the influence." *Id.* at 586 (emphasis added).

A judgment of acquittal is hearsay when it is offered "to show the commission or the noncommission of the acts in question." *Estate of Gaither v. District of Columbia*, No. 03-01458 (CKK), 2013 WL 12320085 (D.D.C. Jan. 2, 2013) (quoting *United States v. Bailey*, 319 F.3d 514, 518 (D.C. Cir. 2003)). Here, Naselroad does not need to prove that he did not commit the crime of wanton endangerment but, instead, that the criminal proceeding terminated in his favor. A judgment of acquittal fulfills this purpose. *See McDonough v. Smith*, 139 S. Ct. 2149 (2019); *Bruce*, 2007 WL 2608835, at *2 (quoting *Logan v. Caterpillar, Inc.*, 246 F.3d 91, 926 (7th Cir. 2001) ("[A]n acquittal is clearly sufficient to show favorable termination.")).

Mabry agrees to stipulate that Naselroad has proved the "favorable termination" element of his malicious prosecution claim. However, a stipulation is something that both parties agree to voluntarily. *Wooten v. Fed. Exp. Corp.*, No. 3: 04-CV-1196-D, 2007 WL 9724305 (N.D. Tx. Mar. 6, 2007). "[W]here a party's evidence is not needlessly cumulative and its introduction will not be unduly prejudicial or cause undue delay or otherwise be wasteful of the jury's time, the party may present his or her case, and the basis for it, regardless of the opposing party's decision not to contest some part of that evidence." *Smith v. Summers*, 334 F. Supp. 3d 339, 345 n.6 (D.D.C. 2018) (citing *Parr v. United States*, 255 F.2d 86, 88 (5th Cir. 1958)).

Accordingly, Naselroad will be permitted to advise the jury that he was acquitted of the wanton endangerment charges. The information clearly is relevant, since he must establish that the criminal proceeding terminated in his favor. *See* Fed. R. Evid. 401. The Court is unpersuaded by Mabry's argument that a jury would place too much significance on Naselroad's acquittal. Contrary to Mabry's suggestion, there is no reason to believe that a properly-instructed jury could not understand the relative burdens of proof in criminal and civil cases. Further, telling the story of Naselroad's prosecution without including his acquittal is likely to confuse jurors, since they will be left to speculate about the outcome of the criminal proceedings.

Finally, Mabry has moved to exclude testimony by Naselroad's expert, Dr. Michael Lyman. Naselroad concedes that, in light of the limited issues remaining in this case, the only opinion Lyman intends to offer is "that Defendant Mabry's use of deadly physical force upon Joel Naselroad was objectively unreasonable because he was not properly identified as a law-enforcement officer." [Record Nos. 185-1, pp. 9-11; 200, p. 7] Mabry contends that this

opinion should be excluded because Lyman "does not (and could not) identify any standard that categorically requires police identification prior to use of deadly force." [Record No. 185, p. 17]

Rule 702 of the Federal Rules of Evidence governs admissibility of expert opinions. The rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to facts of the case.

Courts have permitted qualified experts to testify about "discrete police-practice issues when their testimony will aid the trier of fact." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004). However, to be admissible, any expert's opinion must be reliable and it must assist the jury in deciding the issues. *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 528-29 (6th Cir. 2008). Having reviewed Lyman's report, the Court agrees that Lyman has not offered an admissible opinion regarding the officers' alleged failure to identify themselves.

Lyman identifies the "reasonable officer" test set forth in *Graham v. Connor*, 490 U.S. 386 (1989), and explains that

> [t]his means that, in determining the necessity for force and the appropriate level of force, officers shall evaluate each situation in light of the known circumstances, including, but not limited to, the seriousness of the crime, the level of threat or resistance presented by the subject, and the danger to the community.

[Record No. 185-1, p. 10] Lyman also cites professional policing guidelines issued by the International Association of Police Chiefs, which state, in part:

> [O]fficers use only the force that reasonably appears necessary to effectively bring an incident under control, while protecting the lives of the officer and others. . . . The use of force must be objectively reasonable. The officer must only use that force which a reasonably prudent officer would use under the same or similar circumstances.

*Id.* at p. 11. Lyman concludes that "[a] reasonable officer would know that being present on a citizen's private property and not being properly identified as a law-enforcement officer would cause the occupants of that residence to fear that intruders were on their property." *Id.*

This Court is charged with ensuring that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 597 (1993); *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001). As the defendant points out, Lyman fails to cite any standard regarding police officers' duty to identify themselves before using deadly force. And while Lyman relies on the reasonable officer standard in general, he does not explain how the officers' alleged failure to identify themselves falls short of this standard. Accordingly, it is unclear how Lyman's opinion relates to any issue in the case and therefore would not be helpful to the jury. *See Daubert*, 509 U.S. at 591-92 ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.) The motion, therefore, will be granted with respect to this proposed testimony.

Accordingly, it is hereby

**ORDERED** that Defendant Mabry's motion *in limine* [Record No. 185] is **GRANTED**, in part, and **DENIED**, in part, consistent with this Memorandum Opinion and Order.

Dated: September 26, 2019.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky